UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

08-21106 CR-LENARD MAGISTRATE JUDGE
GARBER

CASE NO._____

18 U.S.C. § 1343
15 U.S.C. § 78j(b)
15 U.S.C. § 78ff(a)
17 C.F.R. § 240.10b-5
18 U.S.C. § 2

UNITED STATES OF AMERICA

vs.

HAMED ELBARKI,
    a/k/a "Eddy Elbarki,"

    Defendant.
_____/

FILED by _____ D.C.
DEC 1 1 2008
STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. Aventura Trust Investments Corp. (hereinafter "ATI") was a Florida corporation with its principal place of business in Miami-Dade County, in the Southern District of Florida. ATI operated as a finance company specializing in the mortgage industry. A mortgage loan is a loan, usually by a bank or other lending institution, made to finance the purchase of real estate.

2. On or about October 4, 2004, the defendant, **HAMED ELBARKI**, incorporated ATI. Throughout its operation, **ELBARKI** was the sole owner and president of ATI.

3. J.V. and C.V. were victims solicited to invest in a business venture offered by **HAMED ELBARKI** through ATI. In total, J.V. and C.V. invested approximately $1,934,600 in

this business venture.

## COUNTS 1-4
## (Wire Fraud:  18 U.S.C. §§ 1343 and 2)

1. Paragraphs 1 through 3 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning as early as September 2007, and continuing through in or around March 2008, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**HAMED ELBARKI,**
a/k/a "Eddy Elbarki,"

did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made.

### PURPOSE OF THE SCHEME AND ARTIFICE

3. It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by, among other things, fraudulently misappropriating money entrusted to him by investors who believed he would use that money to invest on their behalf.

### MANNER AND MEANS OF THE SCHEME AND ARTIFICE

The manner and means by which the defendant sought to accomplish the purpose of the scheme and artifice included, but were not limited to the following:

4. **HAMED ELBARKI** told potential investors that ATI was in the business of buying and selling residential mortgage loans.

5. **HAMED ELBARKI** created and distributed marketing materials that described and promoted ATI as a profitable business.  In these materials, **ELBARKI** told investors that they could participate in ATI's successes by purchasing passive investment products, called "Class A units," issued by ATI.

6. To induce investment in his offering, **HAMED ELBARKI** told investors that recent

problems in the residential mortgage markets was forcing lending institutions to sell mortgage loans on the secondary market at severely discounted prices. **ELBARKI** falsely claimed that, as a result of this economic trend, he, and his business ATI, could purchase mortgage loans from lending institutions at prices ranging from 10 to 15 percent of the face amount of the mortgage loans. **ELBARKI** falsely claimed that ATI could then resell those same mortgage loans at prices ranging from 50 to 60 percent of the face amount of the mortgage loans, thereby making large profits equal to 40 to 45 percent of the original face value of the loans.

7. To give investors the false impression that he was a successful and capable businessman, **HAMED ELBARKI** held himself out as wealthy executive who headed a multi-million dollar investment fund.

8. **HAMED ELBARKI** gave investors the false impression that he was a trustworthy person. In fact, **ELBARKI** omitted to disclose and concealed the fact that he was a two time convicted felon with a criminal record reflecting federal bank robbery and wire fraud convictions.

9. In or around September 2007, **HAMED ELBARKI** approached two potential investors named J.V. and C.V. about investing in his business. To induce them to invest in ATI, **ELBARKI** held several international telephone conference calls and exchanged numerous international e-mails with J.V. and C.V. During these conversations, **ELBARKI** told J.V. and C.V. that, if they invested in his business buying and selling "Portfolio Discounted Notes," he would personally guarantee their investment by reimbursing their losses if it did not go as planned.

10. In or around September 2007, **HAMED ELBARKI** provided marketing materials and a subscription agreement to J.V. and C.V. These materials claimed, among other things, that J.V. and C.V. would receive an anticipated 50 percent return on their investment in two to four months, if they purchased two "Class A units" from ATI for approximately $826,000.

11. On or about October 5, 2007, J.V. and C.V. wired approximately $827,000 from their account at Ocean Bank in the Southern District of Florida to ATI's account at Citibank in the Southern District of Florida.

12. To induce them to make additional investments, **HAMED ELBARKI** falsely told J.V. and C.V. that their initial investment was successful and the promised returns had been generated.

13. In or around November 2007, **HAMED ELBARKI** asked J.V. and C.V. to make another investment in the amount of $607,600, which would purportedly be added with the initial investment and its purported profits in a new $1.823 million dollar investment opportunity.

14. In or around November 2007, J.V. and C.V. initiated four wire transactions from their accounts at HSBC Bank in Colombia and the Southern District of Florida and Ocean Bank transferring a total of $607,600.00 to ATI's account at Citibank in the Southern District of Florida.

15. In or around December 2007, to further mislead J.V. and C.V. about his financial status and his qualifications, **HAMED ELBARKI** asked J.V. and C.V. to help him promote a $160 million dollar investment fund he purportedly managed, which he falsely claimed had an average annual rate of return ranging from 12.1 to 15.65 percent.

16. On or about January 24, 2008, **HAMED ELBARKI** falsely told J.V. and C.V. that the first two investments in **ELBARKI**'s business venture had successfully generated the promised returns, making their total investment worth approximately $3 million. **ELBARKI** also falsely told C.V. and J.V. that this money was being reinvested in a third transaction, along with $1 million dollars that **ELBARKI** had borrowed from his father on their collective behalf.

17. In or around February 2008, **HAMED ELBARKI** asked C.V. and J.V. to repay half of the $1 million loan purportedly made by **ELBARKI**'s father in Egypt by wiring $500,000 to a bank account in Egypt.

18. On or about March 5, 2008, **HAMED ELBARKI** falsely told J.V. and C.V. that their investments in his business venture were worth more than $7.6 million dollars. **ELBARKI** told them that they could expect to receive their invested money and the millions of dollars in profits from their investments after a "liquidation date" in December 2008.

19. In or around March 2008, to induce J.V. and C.V. to fund the additional $500,000

payment to the Egyptian account, **HAMED ELBARKI** falsely represented that, as a result of his skill and effort, their investment interest in his activities would soon be worth approximately $11.5 million.

20. In or around March 2008, after having difficulty wiring the funds directly to the account in Egypt, J.V. and C.V., initiated three wire transactions from accounts at HSBC Bank and Ocean Bank in the Southern District of Florida transferring a total of approximately $500,000.00 to ATI's account at Citibank in the Southern District of Florida.

21. **HAMED ELBARKI**'s unauthorized transactions misappropriating investor funds included, making a down payment on a private plane, purchasing a diamond engagement ring, and making payments on a residential condominium and luxury cars for personal use.

## USE OF THE WIRES

22. On or about the dates enumerated as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**HAMED ELBARKI,**
a/k/a "Eddy Elbarki,"

did knowingly and willfully, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of

executing such scheme and artifice and attempting so to do, knowingly transmitted and caused to be transmitted, by means of wire communication, in interstate commerce, certain writings, signs, signals, pictures, as more particularly described below:

| COUNT | APPROXIMATE DATE | USE OF THE WIRES |
|---|---|---|
| 1 | September 2007 | **HAMED ELBARKI**, who was in Miami, FL, held an international telephone conference call with J.V., who was in Miami, FL and C.V. who was in the country of Colombia. |
| 2 | September 2007 | **HAMED ELBARKI**, who was in Miami, FL, held a second international telephone conference call with J.V., who was in Miami, FL and C.V. who was in the country of Colombia. |
| 3 | November 14, 2007 | **HAMED ELBARKI**, who was in Miami, FL, sent an electronic communication (e-mail) to J.V., who was in Miami, FL and C.V. who was in the country of Colombia |
| 4 | January 24, 2008 | **HAMED ELBARKI**, who was in Miami, FL, sent an electronic communication (e-mail) to J.V., who was in Miami, FL and C.V. who was in the country of Colombia |

In violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT 5
**(Securities Fraud: 15 U.S.C §§ 78j(b) and 78ff(a); 17 C.F.R. § 240.10b-5)**

1. The General Allegations section and paragraphs 4 through 21 of Counts 1-4 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning as early as September 2007, and continuing through in or around March 2008, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**HAMED ELBARKI,**
**a/k/a "Eddy Elbarki,"**

knowingly, willfully, and unlawfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did, directly and indirectly,

-6-

use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, and did (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person, in connection with the purchase and sale of securities, that is, on or around September 28, 2007, **ELBARKI** offered and sold two "Class A units" issued by ATI to investors J.V. and C.V. in return for approximately $826,000.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

A TRUE BILL

FOREPERSON

_____
R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

_____
RYAN DWIGHT O'QUINN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

HAMED ELBARKI,

           Defendant.
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division**: (Select One)

  __X__ Miami   ____ Key West
  ____ FTL   ____ WPB   ____ FTP

New Defendant(s)    Yes ____ No ____
Number of New Defendants ____
Total number of counts ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    No
   List language and/or dialect

4. This case will take __5__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)            (Check only one)

   I    0 to 5 days    __X__      Petty ____
   II    6 to 10 days    ____      Minor ____
   III   11 to 20 days   ____      Misdem. ____
   IV   21 to 60 days   ____      Felony __X__
   V    61 days and over ____

6. Has this case been previously filed in this District Court? (Yes or No)    No
   If yes:
   Judge: _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No)    No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ____ Yes __X__ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ____ Yes __X__ No

                                                                                    _____
                                                                                     RYAN DWIGHT O'QUINN
                                                                                      ASSISTANT UNITED STATES ATTORNEY
                                                                                      Court No. A5500806

*Penalty Sheet(s) attached                                                                            REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __HAMED ELBARKI, a/k/a Eddy Elbarki__

Case No:

Counts #: 1-4

Wire Fraud

Title 18, United States Code, Section 1343

\* **Max. Penalty**: 20 Years' Imprisonment as to each count

Count #: 5

Securities Fraud

Title 15, United States Code, Sections 78j(b) and 78ff(a)

\***Max. Penalty:** 20 Years' Imprisonment